## BLACKBURN et ux. v. WOODING.

### (Circuit Court of Appeals, Ninth Circuit. May 8, 1893.)

#### No. 65.

1. FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP—NEW STATES.

Act Feb. 22, 1889, § 23, providing for the admission of Washington as a state, provides that all cases pending in the territory at the time of its admission, and arising within its limits, whereof the circuit court established by that act might have had jurisdiction had it existed when the action was commenced, may, at the request of either party, be transferred to such circuit court. *Held*, that this applied to pending actions between a resident of the territory and a citizen of a state. Dorne v. Mining Co., 43 Fed. Rep. 690, and Herman v. McKinney, Id. 689, approved. Strasburger v. Beecher, 44 Fed. Rep. 209, Johnson v. Bunker Hill, etc., Co., 46 Fed. Rep. 417, and Nickerson v. Crook, 45 Fed. Rep. 658, disapproved.

2. EQUITY—CANCELLATION OF DEED—COMMUNITY PROPERTY.

Plaintiff and his first wife held certain land as community property, and, after her death and his second marriage, he contracted to convey it for $6,000, believing himself to be the sole owner. This contract was abandoned because, as he stated to the purchaser, his wife refused to join

in a deed. A verbal agreement was then made by which plaintiff was to accept $3,000 for his interest, and the wife a much larger sum for her alleged interest. The purchaser at this time discovered that the second wife had no interest whatever, but that the first wife's interest descended to her children. He, however, paid the $3,000, and procured a warranty deed for the whole tract from plaintiff, and then refused to perform the other part of the contract on the ground that the wife had no interest to convey. *Held,* that the deed should be canceled as having been procured by the purchaser's deceit. 49 Fed. Rep. 902, reversed.

Appeal from the Circuit Court of the United States for the District of Washington, Western Division.

In Equity. This was a suit by Barbee T. Blackburn and Sadie M. Blackburn, his wife, against Charles T. Wooding, to procure the cancellation of a deed from plaintiffs to defendant. The court below dismissed the bill, (49 Fed. Rep. 902,) and plaintiffs appeal. Reversed.

Galusha Parsons, for appellants.

O. V. Linn, for appellee.

Before McKENNA, Circuit Judge, and HAWLEY and MORROW, District Judges.

McKENNA, Circuit Judge. This case was originally brought in the courts of Washington when it was a territory, and removed, after the admission of the state into the Union, into the circuit court on motion of appellants. Afterwards a motion was made by them to remand it to the state court on the ground that the circuit court had no jurisdiction. The plaintiffs were at the time of the commencement of the action, and are now, citizens of the state of California; the respondent at the time of the commencement of the action was a resident of the territory of Washington, and afterwards a citizen of the state of Washington. It is contended that under section 23 of the act of February 22, 1889, for the admission of Washington and other territories, the circuit court had no jurisdiction. No federal question is involved in the case, and the jurisdiction, if it exist, depends upon diverse citizenship of the parties. Section 23 provides that as to all cases pending in the district courts of any of the territories named at the time of its admission into the Union as a state, and arising within the limits of such state, whereof the circuit and district courts by the act established might have had jurisdiction under the laws of the United States had such courts existed at the time of the commencement of such cases, the circuit and district courts shall be respectively the successors of the district courts of the territory; that as to all other cases the courts established by such state shall be the successors of the territorial courts. Provision is made for files of the records; and it is also provided a transfer should not be made to a federal court except upon the written request of one of the parties, filed in the proper court; if not requested, the case to proceed in the state court. These provisions have received opposite construction at circuit when the ground of jurisdiction is alleged to be the diverse citizenship of parties.

In Dorne v. Mining Co., 43 Fed. Rep. 690, and in Herman v. McKinney, Id. 689, federal jurisdiction was sustained, but in Strasburger v. Beecher, 44 Fed. Rep. 209, Johnson v. Bunker Hill, etc., Co., 46 Fed. Rep. 417, and Nickerson v. Crook, 45 Fed. Rep. 658, it was rejected. The question, therefore, is seriously disputable. It will be observed that the statute makes jurisdiction depend on not what existed at the time of the admission of Washington into the Union, but what might have existed "at the commencement of the case." The test is what would have existed under the supposition of the existence of a circuit court of the United States. Manifestly, a state would have existed, and therefore citizens of a state. If a case had arisen between one of them and a citizen of another state, it would have been a controversy between citizens of different states, and the circuit court would have had jurisdiction under the laws of the United States, and there would have been a case to be transferred under section 23. In his opinion in Johnson v. Bunker Hill, etc., Co., supra, Judge Sawyer took a different view. In that case the learned judge construed the act admitting Idaho into the Union, and, reviewing the decision of Judge Edgerton in Dorne v. Mining Co., 43 Fed. Rep. 690, said that it depended upon the assumption that no circuit court of the United States can exist except in a state admitted into the Union. This assumption the learned judge rejected, and said:

"The supposed existence of a circuit court of the United States for the district of Idaho by no means authorizes, also, a supposed imaginary state of Idaho. We cannot concur in the statement that no circuit court of the United States can exist except in a state admitted into the Union. We know of nothing in the constitution to prevent congress from creating just such a court as we now have, in its wisdom, if it had seen fit to do so, for administering the purely national laws as in the case of a state, leaving the territorial laws enacted by its legislation to be administered in the territorial courts, instead of mingling therein administration in the territorial courts, as is now done."

But we think the learned judge overlooked the fact that the circuit court mentioned in the act is a court clothed with the judicial power under the constitution, and not a territorial court, which congress could create under its legislative power over the territories. It was competent for congress to create a court in the territory of Idaho or Washington, and call it a "circuit court," and give it what jurisdiction it pleased, but it could not invest such court with any part of the judicial power defined in the constitution, and which the circuit courts are created to exercise. This was decided early in the case of Insurance Co. v. Canter, 1 Pet. 546, and repeated in Benner v. Porter, 9 How. 242. Territorial courts, therefore, are not courts of the United States, as was said by Chief Justice Chase in Clinton v. Englebrecht, 13 Wall. 447. Hence it necessarily follows that the existence of a circuit court supposes the existence of a state; and the record shows that under this supposition the parties to the case would have been citizens of different states; and it also shows that, at the time of the transfer, such diversity existed. The circuit court, therefore, did not err in refusing to remand the case, and this court has jurisdiction.

The facts on the merits are as follows: In 1884 there was issued by the United States to the plaintiff Barbee T. Blackburn a patent to the land in controversy, he then being married to M. W. Blackburn, who afterwards died, leaving children. In 1887 he married his coplaintiff. During the lifetime of his former wife, and at the time of his marriage with his coplaintiff, he lived in the state of Kansas. Believing him to be the sole owner of the land, the following telegrams passed between him and C. E. Jameson & Co., of Washington territory:

"Montesano, W. T., February 15th, 1889.

"B. T. Blackburn, Fall Brook, California: Wire us forty-day refusal on section six, township seventeen, range nine.          C. E. Jameson & Co."

"Fall Brook, California.

"C. E. Jameson, Montesano, Washington: Six thousand buys section six.
"B. T. Blackburn."

"Montesano, W. T., February 18th, 1889.

"B. T. Blackburn, Fall Brook, California: Have sold six at six thousand. Make warranty deed to Charles T. Wooding, and send to Aberdeen bank. Money is deposited there.          C. E. Jameson & Co."

To the last telegram plaintiff wrote as follows:

"Fall Brook, California, February 21st, 1889.

"C. E. Jameson—Dear Sir: Your dispatch received, and contents carefully noted. I have not received my patent; only have the receipts. You say send deed. You fill out a deed, and send it with draft for six thousand dollars to West Fall Brook Banking Company, with instructions to deliver draft to me on receipt of deed delivered to them, properly signed and acknowledged.
"Yours, truly,          B. T. Blackburn."

—To which he claims he received no reply, and considering the negotiations at an end, and being desirous of selling the land, sent a power of attorney to G. F. Westfall, of Montesano, who had been his partner, and his wife sent a power of attorney to one J. W. Cheatham. Cheatham subsequently had an interview with Jameson, and the latter testified that—

"Cheatham said he represented Mrs. Blackburn, who had refused to sign the deed, as she had learned that the property was worth more than six thousand dollars. I asked him what he proposed to do about it. He said he proposed to do this: To ascertain the market value of the section, and, if he found it to be sixteen thousand dollars, why, Mrs. Blackburn would deed upon paying her one half of that, or eight thousand dollars. He said that Mr. Blackburn proposed to stand by his bargain, and was perfectly willing to deed and carry out his part of the contract. So we went down to Aberdeen to ascertain the value of the property. I had informed Mr. Thomas of Mr. Cheatham's being here, and he came up. I do not remember the valuation he put on the property when he got here. I think he proposed to execute a deed for Mrs. Blackburn upon the payment of seven or eight thousand dollars. Mr. Westfall was to carry out Mr. Blackburn's contract under his power of attorney from Mr. Blackburn, and the consideration was to be three thousand dollars."

A verbal arrangement was then entered into between the parties, and the court below finds—and the evidence sustains the finding—that Barbee T. Blackburn was to execute and deliver to the defendant a warranty deed for the consideration of $3,000, and that Sadie M. Blackburn should give a quitclaim deed for an additional

sum of $11,489. The value of the property was $22,978. The court also finds that the deed to the defendant was executed and delivered in pursuance of this agreement, but, after receiving it he declined to receive Mrs. Blackburn's deed, or pay the sum agreed to be paid. It is extremely doubtful if the deed was delivered, or that Barbee T. Blackburn acted otherwise than in perfect good faith. His interest was a bargain at $6,000; it was a great bargain at $3,000, and, further, he was willing to convey it. The court finds that the property was the community property of Blackburn and his first wife, and that her heirs, not Sadie M. Blackburn, owned an undivided half of it by the laws of Washington. If so, he had no power to convey but an undivided half of the land. But the defendant desired more, and got more by deception. His right was to refuse to proceed with the contract, or accept Blackburn's interest, paying a proportionate part of the price for the whole, or sue for damages. He did not choose to do either, but, as the evidence shows and the court finds, he entered into another contract with plaintiff's representatives, Cheatham and Westfall, and agreed to pay $3,000 for Blackburn's interest, which they then had been informed was an undivided half, and to pay $11,489 for Mrs. Blackburn's interest or asserted interest.

The evidence does not show if defendant or his agents knew at this time that Mrs. Blackburn had no title, or concealed it, or, ascertaining it afterwards, conceived then the plan to deceive plaintiffs. At any rate, their actions amounted to an abandonment of the first contract, and there was no execution of the second contract. Indeed, they obtained from the plaintiff Blackburn (assuming the power of attorney to Westfall justified the deed) a deed, not for his interest in the land, but a deed for the land with covenants of warranty against all persons whatsoever, but only paid him for his interest. We do not think the transaction should be allowed to stand. Judgment and decree are therefore reversed, and the cause remanded, with directions to the circuit court to enter a decree in favor of plaintiffs.