JOSEPH FORSYTH, PLAINTIFF IN ERROR, *v.* THE UNITED STATES.

The Judiciary Act of 1789 made no provision for the revision, by this court, of judgments of the Circuit or District Courts in criminal cases; and the act of 1802 (2 Stat. at Large, 156) only embraced cases in which the opinions of the judges were opposed in criminal cases. There is, therefore, no general law giving appellate jurisdiction to this court in such cases.

But the act of Congress passed on the 22d of February, 1847 (Sess. Laws, 1847, chap. 17), providing that certain cases might be brought up from the Territorial courts of Florida to this court, included all cases, whether of civil or criminal jurisdiction.

Under this act, this court can revise a judgment of the Superior Court of the District of West Florida in a criminal case, which originated in October, 1845, and was transferred to the District Court of the United States for the Northern District of Florida.

Proceeding, therefore, to revise the judgment, this court decides that the jurisdiction of the Territorial courts, of which the Superior Court was one, ceased on the erection of the Territory into a State, on the 3d of March, 1845. The proceedings before the court in which the indictment was found were, consequently; *coram non judice*, and void.

THIS case was brought up, by a writ of error, from the District Court of the United States for the Northern District of Florida.

The facts in the case are sufficiently set forth in the opinion of the court.

Mr. Justice NELSON delivered the opinion of the court.

This is a motion by the Attorney-General, on behalf of the United States, to dismiss the writ of error for want of jurisdiction, it having been taken out in a criminal case to bring up a judgment on an indictment for cutting timber upon government lands.

The indictment was returned by the grand jury, at the October term, 1845, of the Superior Court of the District of West Florida, in the late Territory of Florida, in the County of Escambia, and was founded upon the act of Congress passed March 2, 1831, entitled "An act to provide for the punishment of offences committed in cutting, destroying, or removing live-oak and other timber or trees reserved for naval purposes."

The prisoner was arrested by a bench warrant issued upon the indictment on the 5th of November, 1845; but was taken out of the custody of the marshal by virtue of a writ of *habeas corpus* issued from the Circuit Court of the State of Florida, at the November term, 1845, of that court, and discharged from the arrest.

He was afterwards arrested on an *alias* bench warrant, issued by the District Court of the United States for the Northern District of the State of Florida, on the 7th of February, 1848; and at the March term thereafter of the court was arraigned, and pleaded not guilty.

Previous to the trial, a motion was made on behalf of the prisoner to quash the indictment, on the ground, —

1. That it was found in the late Superior Court of the District of West Florida by a grand jury impanelled at the October term, 1845, of said court, it being after the admission of the Territory of Florida into the Union as a State, and therefore that neither the court nor the grand jury thereof had jurisdiction over the offence, or authority to find the indictment.

2. That the act of Congress of March 2, 1831, under which the indictment was found, prohibited the cutting of timber only on land reserved for the use of the navy of the United States, and on none other.

This motion was denied, and the case ordered for trial.

The jury found the prisoner guilty, and assessed the value of the timber cut by him at sixty-one dollars. And thereupon the court pronounced judgment, that he be imprisoned for one day, and pay a fine of two hundred and fifty dollars, and the costs of the prosecution, which were taxed at $299.27.

The proceedings before us have been brought up on a writ of error to this judgment; and the question is, whether there is any act of Congress conferring authority upon this court to review them in this form, or in any other.

The Judiciary Act of 1789 (1 Stat. at Large, 73) made no provision for the revision of judgments of the Circuit or District Courts in criminal cases; and as the cases in which the appellate jurisdiction of this court can be exercised depend upon the regulation of Congress, it followed that no appeal or writ of error would lie. United States v. Moore, 3 Cranch, 159; 7 Wheat. 38; Ex parte Kearney, 3 Peters, 201.

The act of Congress passed 29th April, 1802 (2 Stat. at Large, 156), which provided for a certificate to this court of the point, in case of a division of opinion in the Circuit Court, embraced cases in which the opinions were opposed in criminal as well as in civil trials; and since that act, questions of law in criminal cases have occasionally been the subject of examination here for the instruction of the courts below (Ibid., p. 159, § 6). United States v. Tyler, 7 Cranch, 285; The Same v. Wiltberger, 5 Wheat. 76; The same v. Smith, Ibid. 153; The Same v. Holmes, Ibid. 412; The Same v. Marigold, ante, p. 560.

There is no general law, therefore, upon which a revision of the judgment in this case can be maintained; and the only question is, whether, in a peculiar class of cases, to which this belongs, a writ of error is specially provided for by the act of Congress passed February 22, 1847 (Sess. Laws, 1847, ch. 17).

Forsyth v. The United States.

It is insisted, on the part of·the plaintiff in error, that the case is embraced in the eighth section of that act.

It is an act entitled " An act to regulate the exercise of the appellate jurisdiction of the Supreme Court in certain cases." The previous sections of the act provide for the transfer of the records of the proceedings, including the judgments and decrees of all cases not appropriately belonging to State jurisdiction, pending in the Superior Courts or Court of Appeals, in the Territory of Florida, on the 3d of March, 1845 (the date of her admission into the Union), into the District Court of the United States for the State of Florida; and also for the hearing and decision of all cases or writs of error and appeals that had before been brought into the Supreme Court of the United States under any existing law, and which were pending here at the period above mentioned; and further, for the bringing of writs of error and appeals in all cases of judgments and decrees which were pending at the period aforesaid, and were by the act transferred to the District Court, in which writs of error or appeals had not, but might have been taken to this court if the Territory had not been admitted into the Union.

The eighth section then provides, that in all cases pending in any of the Superior Courts of the Territory or Court of Appeals on the 3d of March, 1845, not legally transferred to the State courts, and which the said Territorial courts continued to take cognizance of, and proceeded to hear and determine after that day, and which were claimed as still pending therein as courts of the United States; and in all cases of a Federal character and jurisdiction commenced in said Territorial courts after that day, and in which judgments and decrees were rendered therein, the records and proceedings thereof, and the judgments and decrees therein, are hereby transferred to the United States District Court for the State of Florida; and writs of error and appeals may be taken by either party to remove the judgments or decrees that have been or may be rendered in such cases into the Supreme Court of the United States, and such court may hear and determine such cases on such writ of error or appeal, and issue its mandate to such District Court, with a proviso that the writ of error or appeal shall be taken within one year from the passage of the act, or from the rendition of the judgment or decree, and with the further proviso, that nothing in the act shall be construed as affirming or disaffirming the jurisdiction or authority of the Territorial judges to proceed in or to determine such cases after the 3d of March, 1845; but the same shall be referred to the Supreme Court for its decision in the matter.

We think it apparent, from this reference to the provisions of the act of 1847, that Congress, in respect to the peculiar class of cases particularly described in the eighth section, intended to give to either of the parties to the suit or proceedings the right to a revision by this court of the judgments or decrees rendered by the Territorial judges therein, without limitation as to the amount in controversy, or whether the case was of criminal or civil jurisdiction.

The previous sections had provided for the transfer of the records, judgments, and decrees into the United States District Court that had been rendered in the Territorial courts before the Territory was admitted into the Union, and were pending in those courts at the time of the admission; and in those cases the right of the party to bring up the judgments and decrees for revision on writs of error and appeals is specially restricted to those in which the right would have existed under the acts of Congress if the Territory had not been admitted into the Union, — in other words, if the Territorial system of government had continued. Under that system, the right of review by this court was limited to civil cases, and to those only where the amount in controversy exceeded $ 1,000.

But we find no such restriction in the eighth section of the act, which provides for the transfer of the records and proceedings in cases in which the judgments and decrees were rendered in these courts after the Territorial system had become superseded by the erection of the Territory into a State. That section declares, that in all cases pending in the Superior Courts and Court of Appeals on the 3d of March, 1845, and which said courts continued to take cognizance of, and proceeded to determine after that day, and in all cases of Federal character and jurisdiction commenced in said courts after that day, and in which judgments or decrees were rendered, the records, &c., shall be transferred to the District Court; and writs of error or appeals may be taken by either party to remove the judgments or decrees, &c.

There can be no doubt but that the phraseology embraces all civil cases of the class mentioned; and we think it sufficiently comprehensive to include criminal cases also; and such was undoubtedly the object of the provision. Every part of the section shows that the principal design of providing for a revision of these proceedings was to procure the judgment of this court upon the question of jurisdiction of the Territorial judges after the erection of the Territory into a State; it having been insisted by the parties against whom the proceedings were had, that their judicial functions ceased with the Territorial govern-

ment.   And in this view, the reason for including the criminal
cases in the remedial law, of which these courts also took cog-
nizance, is quite as strong as that which led to the provision in
civil cases.

The peculiar situation of all the cases, civil and criminal, of
which cognizance was taken after the termination of the Terri-
torial government, and previous to the establishment of the
Federal courts, was supposed to make this special provision ex-
pedient, in order that the question of jurisdiction might be
settled speedily, and in a way most convenient for the parties
and at the least expense.   These considerations applied with
peculiar force to the criminal cases in which convictions had
taken place, as the prisoners were either undergoing the punish-
ment of their offences, or were subject to its infliction.

We are of opinion, therefore, that the court has jurisdiction
of the case to revise the judgment of the court below on error,
and that the motion to dismiss must be denied.

It was agreed by the counsel, on the argument of the motion
to dismiss, that, if we arrived at the conclusion that the court
had jurisdiction, under the act of 1847, to revise the judgment
of the court below on error, we should proceed to examine the
case upon the merits, and make a final disposition of the
same.

We have, accordingly, looked into the record for this pur-
pose, and find that the prisoner was indicted at the October
term, 1845, of the Superior Court of the District of West
Florida, in the late Territory of Florida.   The session began on
the 3d day of October, at which time a grand jury were drawn
and impanelled and sworn ; and that on the 3d day of Novem-
ber following, during the same term, they came into court and
presented the indictment in question against the prisoner,
which was then and there received and filed in the court.

The indictment contained two counts, charging, substantial-
ly, the same offence, namely, the cutting of timber trees then
and there standing and being on the government lands, the said
lands being other than those lands which, before that time, had
been reserved or purchased, in pursuance of law, for the use of
the United States for supplying and furnishing therefrom tim-
ber for the navy, with intent to dispose of the same, &c.

The indictment was afterwards transferred from the Superior
Court, in which it was found, together with other papers in the
cause, in pursuance of the act of Congress of 1847, to the Dis-
trict Court of the United States for the Northern District of
Florida, and filed therein ; and at the January term, 1848, of
that court, held at Tallahassee, the cause was docketed in said

court, and ordered for trial at the next term thereof, to be held at Pensacola on the first Monday of March next, notice of which order was given to the prisoner. At this term, as we have already stated, in disposing of the motion to dismiss, the prisoner was arraigned, tried, and convicted, after a motion had been made, and denied, to quash the indictment, on the ground that the court had no jurisdiction.

It will be perceived, that the proceedings were instituted in the Superior Court, in October, 1845, after the Territory of Florida was erected into a State, and the Territorial government had ceased; and that, pending the indictment in that court, and before the trial, the cause was transferred to the District Court, in pursuance of the act of 1847, and there tried, and the prisoner convicted.

We have already held at this term, in the case of Hiram Benner and others v. Joseph Y. Porter (*ante*, p. 235), that the jurisdiction of these Territorial courts ceased on the erection of the Territory into a State, on the 3d of March, 1845; and, consequently, the proceedings before the court in which the indictment was found were *coram non judice*, and void.

Whether Congress possessed the power to confer afterwards upon the United States District Court jurisdiction to arraign and try the prisoner on this indictment, thus giving effect to it *ex post facto*, we need not stop to inquire, as the act of 1847 does not profess to confer any such authority. We have no doubt they possess no such power. An indictment upon which a prisoner can be held to answer must be found by a grand jury impanelled and sworn in pursuance of law, and before a court of competent jurisdiction.

The act of 1847 provided simply for the transfer of those cases pending in the Superior Courts, and which those courts claimed to exercise jurisdiction over after the Territorial government had ceased, to the Federal District Court of the State; and for writs of error or appeals to remove the judgments or decrees therein to this court for review, taking care, at the same time, to guard against any construction that might be given to the act tending to affirm the jurisdiction, but referring the question to this court to be determined.

Nor is there any provision in the eighth section conferring any special authority upon the District Court, in respect to criminal cases pending in the Superior Courts, the records and proceedings of which were directed to be transferred, to take up those that remained unfinished, and to proceed therein to trial and judgment. We refer to those criminal cases of which the Superior Courts took cognizance after the Territorial government ceased, and with it the jurisdiction of these courts.

We do not doubt but that it was competent for Congress to have provided for the transfer of pending criminal cases, as well as civil, at the termination of the Territorial government, to the Federal courts, with authority to proceed therein to a final disposition, the same as if the cases had originated in those courts.   A provision of this kind is not only fit and proper, but one that should always be made in respect to all the pending business remaining in the courts at the change of government.

But the case here is different.   The section relates to cases pending in the courts that had taken cognizance of them, and proceeded therein, after it is alleged their jurisdiction had ceased.   And hence we find no provision for taking up the unfinished cases after the transfer, and proceeding in the same to a final disposition.

We are satisfied, therefore, that the District Court had no jurisdiction to arraign and try the prisoner on the indictment previously found in the Superior Court of the late Territory of Florida, or to pronounce judgment thereon, and that the judgment accordingly should be reversed, and the proceeding remitted to the court below, with directions to quash the indictment and discharge the prisoner from his recognizance, or imprisonment, as the case may be.

The act of Congress passed March 2, 1831 (4 Stat. at Large, 472), upon which the indictment in this case is founded, has been before us at this term for consideration, in the case of the United States v. Briggs, and in which we have held that an indictment in all respects corresponding with the present one was well warranted by the provisions of that act.   It makes the cutting of trees or timber standing on any lands belonging to the government, by any person, whether such lands be or be not reserved or purchased, in pursuance of law, for the use of the navy, with the intent to convert the same to his own use, a criminal offence, punishable by fine and imprisonment.

There is no distinction made between the acts of trespass in cutting the timber on lands reserved and not reserved for the use of the navy.   Each is made a misdemeanour, and subjected to the same penalty.   There is no ambiguity in the act in this respect, or room for a different interpretation.   Had the question in this case turned upon the merits, we should not have entertained a doubt upon it, or have considered it open after the decision in the case already referred to.

The act of 1817 (3 Stat. at Large, 347) was nearly as comprehensive as the one in question.   The only difference is, that there the offence of cutting on lands belonging to the government other than those reserved for the use of the navy was

limited to the cutting of live-oak or red-cedar timber; here it is enlarged to the cutting of live-oak or red-cedar trees " or other timber," thereby removing the restriction in the act of 1817. In other respects, the two acts are substantially the same.

### *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Florida, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said District Court in this cause be, and the same is hereby, reversed and annulled, for the want of jurisdiction in that court, and that this cause be, and the same is hereby, remanded to the said District Court, with directions to quash the indictment and discharge the prisoner.