**Richard A. WOODRING, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17094.**

United States Court of Appeals
Ninth Circuit.

June 7, 1962.

Rehearing Denied July 24, 1962.

Eugene R. Belland and Eugene V. Miller, Fairbanks, Alaska, and Thomas G. Hanlon, Tulsa, Okl., for appellant.

Warren C. Clover, U. S. Atty., James R. Clouse, Jr., and Howard Haskins, Jr., Asst. U. S. Attys., Anchorage, Alaska, for appellee.

Before CHAMBERS, HAMLIN and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge.

Someone is guilty of "holding up" the Airport Road Branch of the Alaska National Bank of Fairbanks on the afternoon of January 12, 1959, and escaping with about fourteen thousand dollars in cash. Woodring, under one indictment has been found guilty of several offenses in connection with that occurrence. The direct evidence was weak of Woodring's guilt, but there was probably enough circumstantial evidence to support the jury verdict. However, we do not reach that question because of our view of the threshold jurisdictional question.

The executive proclamation [1] pursuant to the Enabling Act [2] of July 7, 1958, establishing Alaska as the 49th State of the Union, was issued and effective January 3, 1959, nine days before the robbery.

By Section 18 [3] of the Enabling Act, the old federal territorial court and its four

1. Proclamation No. 3269, 24 F.R. 81.

2. Public Law 85-508, 72 Stat. 339, 48 U.S.C.A. preceding section 21.

3. Section 18 provided as follows:

    "**Jurisdiction of District Court; termination date.** The provisions of the preceding sections with respect to the termination of the jurisdiction of the District Court for the Territory of Alaska, the continuation of suits, the succession of courts, and the satisfaction of rights of litigants in suits before such courts, shall not be effective until three years after the effective date of this Act, unless the President, by Executive order, shall sooner proclaim that the United States District Court for the District of Alaska, established in accordance with the provisions of this Act, is prepared to assume the functions imposed upon it. During such period of three years or until such

divisions were continued for a period of three years subject to earlier termination on conditions. Deeming the conditions met, the President on February 20, 1960, by proclamation,[4] terminated the federal territorial court, a year, one month and 17 days after statehood.

The trouble here starts with Woodring being indicted in the territorial district court, fourth division, on March 11, 1959, two months and eight days after statehood. And, there he entered his pleas. Then he was tried in the United States District Court for the District of Alaska in June, 1960. Doggedly Woodring has resisted at all pertinent times the jurisdiction of the United States District Court for the District of Alaska to try him.

We hold that the judgment must be reversed on the narrow ground that the Enabling Act did not provide for the transfer of cases such as this to the United States District Court for the District of Alaska. Section 15, as pertinent, reads as follows:

"All causes pending or determined in the District Court for the Territory of Alaska at the time of the admission of Alaska as a State which are of such nature as to be within the jurisdiction of a district court of the United States shall be transferred to the United States District Court for the District of Alaska for final disposition and enforcement in the same manner as is now provided by law with reference to the judgments and decrees in existing United States district courts. All other causes pending or determined in the District Court for the Territory of Alaska at the time of the admission of Alaska as a State shall be transferred to the appropriate State Court of Alaska. * * * "

While courts of general jurisdiction normally have the powers they ought to have, still the rule of "the inclusion of one excludes the other" would have to search long to find a better place to be applicable. Provision was made only for transfer of causes to the United States District Court for the District of Alaska which were pending on the date of admission (January 3, 1959).[5] To have this Section 15 carry over to federal criminal cases filed after January 3, 1959, in the Territorial Court, in our view would handmake language which is not there. To put the language there would be a case of doing what one would have done if he

Executive order is issued, the United States District Court for the Territory of Alaska shall continue to function as heretofore. The tenure of the judges, the United States attorneys, marshals, and other officers of the United States District Court for the Territory of Alaska shall terminate at such time as that court shall cease to function as provided in this section."

4. Executive order No. 10,867, 25 F.R. 1584.

5. The presiding judge of the Fourth Division of the United States District Court for the Territory (then State) of Alaska on February 19, 1960, apparently as one of his last acts, and with considerable acuteness of the statutes and proclamations involved, issued a general transfer order, as an "attempted compliance" with Public Law 85–508, and "particularly" with respect to "Section 15 thereof" in pertinent part as follows:

"IT IS HEREBY ORDERED that all causes pending or determined in the above-entitled courts for the Second and Fourth Judicial Divisions at the time of the admission of Alaska as a State, * * * which, at the time of said admission of Alaska as a State, to-wit, at one minute past noon on the third day of January, 1959, at the City of Washington, District of Columbia, were of such nature as to then be within the jurisdiction of a district court of the United States, for which purposes the above-entitled Court is not to be so construed or considered, are hereby transferred to the United States District Court for the District of Alaska; * * *

"IT IS FURTHER ORDERED that the above and foregoing Order take effect at one minute prior to the issuance hereafter of that Executive Order provided for in Section 18 of Public Law 85–508."

Thus, it may be seen that no effort was made to transfer cases started after January 3, 1960. Apparently, he read the Enabling Act as this court does.

had had the thought to do it at the critical time.

Our opinion is fortified by our reading of Benner v. Porter, 9 How. 235, 13 L.Ed. 119, and Forsyth v. United States, 9 How. 571, 13 L.Ed. 262. While the decisions stand on a number of grounds, we note the importance attached by the Supreme Court to the lack of transfer provision in the Enabling Act for the admission of Florida on March 3, 1845, 5 Stat. at L. 542, and the federal statute establishing the United States District Court for the District of Florida March 3, 1845, 5 Stat. at L. 788. See the Benner opinion at page 245 and the Forsyth case at page 577. (Congress did not authorize the continuance of the Florida territorial court when statehood was granted and the Benner case held it was not continued by implication.)

In holding as we do, we appreciate that we must probably let a guilty man go; that we leave unresolved many questions and, perhaps, create new ones. But we cannot render an advisory opinion. Questions which we do not reach include:

1. Suppose Woodring had never objected to the jurisdiction of the new United States District Court for the District of Alaska. That is, did the court have naked power to act—if unchallenged?

2. Suppose this were a civil case instead of a criminal case with the same dates involved. What would we do?

3. Was there a United States District Court for the District of Alaska in existence without a judge or other staff from January 3, 1959, to the date Judge Walter H. Hodge qualified on February 19, 1960, as the first constitutional United States District Judge for the District of Alaska?

4. What about essentially federal criminal or civil cases that may have been tried or otherwise disposed of by the interim court, the territorial court continued as aforesaid, between January 3, 1959, and February 20, 1960?

As in Parker v. McCarrey, we find that the last minute addition of Section 18 of the Enabling Act did not search far enough back through the act to correct inconsistencies. It would be easy enough to criticize the draftsman of the amendment almost three years later after calm thought, but he may have done very well in the exigency of the moment with which he was faced in 1958.

However, we do point out that here was a case where the solution was easily at hand on February 20, 1960. Although the opinion in Parker v. McCarrey, 9 Cir., 268 F.2d 907, did not reach in any way the Woodring problem, still trouble was forecast in the briefs presented in that case. The obvious course on February 20, 1960, was to play safe and reindict Woodring and others similarly situated.

Judgment reversed.

HAMLIN, Circuit Judge.

I respectfully dissent.

When Alaska became the 49th State of the Union on January 3, 1959, there were no state courts ready to perform judicial functions. Furthermore, on that date Alaska ceased to be a territory of the United States, and the new United States District Court for the State of Alaska was likewise not ready to perform its functions. Strictly speaking, the former United States District Court for the Territory of Alaska could no longer exist without there being a territory. See Benner v. Potter, 9 How. 235, 50 U.S. 235, 13 L.Ed. 119 (1850); Parker v. McCarrey, 268 F.2d 907 (9th Cir. 1960). Nevertheless, Congress foresaw the existence of an interim period between the time when Alaska became a state and the time when its courts and the new federal district court could operate. In order to alleviate the difficulties inherent in a situation where there would be no courts Congress created a special court to perform judicial functions during the interim period. Hereinafter this special court will be called the "interim court".

The interim court was created by section 18 of the Alaska Statehood Act, 72 Stat. 339 (1958):

"The provisions of the preceding sections with respect to the termina-

tion of the jurisdiction of the District Court for the Territory of Alaska, the continuation of suits, the succession of courts, and the satisfaction of rights of litigants in suits before such courts, shall not be effective until three years after the effective date of this Act, unless the President, by Executive order, shall sooner proclaim that the United States District Court for the District of Alaska, established in accordance with the provisions of this Act, is prepared to assume the functions imposed upon it. During such period of three years or until such Executive order is issued, the United States District Court for the Territory of Alaska shall continue to function as heretofore. The tenure of the judges, the United States attorneys, marshals, and other officers of the United States District Court for the Territory of Alaska shall terminate at such time as that court shall cease to function as provided in this section."

From a reading of section 18 it is readily apparent that Congress intended to fill the interim by merely providing for the continued existence of the old Territorial Court until three years after Alaska was admitted as a state or until such earlier time as the President proclaimed the new District Court for the District of Alaska ready to operate. Congress probably did not foresee that the interim court might have different characteristics and serve different purposes than the old Territorial District Court. On the contrary, it would appear that Congress intended the creation of the interim court to be a simple and practical way to fill a void created by Alaska's inability to have its state courts open for business on January 3, 1959, when Alaska became a state.[1]

On February 20, 1960, the President, by executive order,[2] proclaimed that the new District Court for the District of Alaska was ready to perform its functions. On this date, then, the interim court ceased to exist. By the terms of section 18 of the Alaska Statehood Act

1. See note 5 infra and accompanying text.

   Just what the precise nature of the interim court is is a difficult problem. If the interim court is neither a territorial court nor the District Court for the State of Alaska it must be a special court with perhaps some unique characteristics. The Supreme Court had occasion to partially consider the nature of the interim court in Metlakatla Indian Community, etc. v. Egan, 363 U.S. 555, 80 S.Ct. 1321, 4 L.Ed.2d 1397 (1960). In this case the problem was whether the Court had jurisdiction over an appeal from the interim court under 28 U.S.C.A. § 1257(2) which provides for appeal to the Supreme Court from final judgments or decrees rendered by the highest court of a state where constitutional validity of a state statute is involved. The questions were (1) Was the interim court a state court within the meaning of § 1257? and (2) Was the interim court the highest state court of Alaska when the decisions appealed from were rendered? The Supreme Court answered both questions in the affirmative. The interim court was a state court because it was invested with the judicial power of the State by the State's legislature. The interim court was the highest court of

   the State at the time the decision appealed from was rendered because Alaska's State Supreme Court was not yet open for business.

   The Court said of the interim court:

   "It is apparent * * * that the [interim] court is to a significant degree the creature of two sovereigns acting cooperatively to accomplish the joint purpose of avoiding an interregnum in judicial administration in the transitional period." (363 U.S. at 558, 80 S.Ct. at 1323.)

   Although the court carefully avoided deciding if and to what extent the interim court was a federal court, it is firmly believed that the Court if presented with the question would decide that the interim court was a federal court (even though such a holding would not be absolutely necessary in order to arrive at the result contended for in this opinion). The above quotation from Metlakatla points up the joint desires of Congress and the Alaska legislature to fill an interregnum. Congress did its part by incorporating section 18 into the Alaska Statehood Act, and it must certainly have intended the interim court to fill a federal interregnum as well as a state interregnum.

2. Executive Order, No. 10867, 25 Fed.Reg. 1584 (1960).

the prior specific provisions relating to the termination of jurisdiction, continuation of suits and succession of courts became effective. Section 15 of the Act provides in part:

"All causes pending or determined in the District Court for the Territory of Alaska at the time of the admission of Alaska as a State which are of such nature as to be within the jurisdiction of a district court of the United States shall be transferred to the United States District Court for the District of Alaska for final disposition and enforcement in the same manner as is now provided by the law with reference to the judgments and decrees in existing United States district courts. All other causes pending or determined in the District Court for the Territory of Alaska at the time of the admission of Alaska as a State shall be transferred to the appropriate State court of Alaska."

In the instant case the indictment against the appellant was not returned until *after* January 3, 1959, when Alaska became a state, and thus, the case against the appellant was not "pending" at the time Alaska became a state. The majority has decided that, because of section 15, the new District Court for the District of Alaska could have no jurisdiction over the appellant based on an indictment returned in the interim court since there was no provision for the transfer of cases which were not pending in the old Territorial Court on January 3, 1959.[3]

At the outset it must be admitted that Congress' use of the word "pending" in sections 13–17 was unfortunate and careless; however, it is not necessary to rely on any of those sections (13–17) to say that an indictment from the interim court could provide the basis for a trial in the new District Court. This is so because section 18 which creates the interim court and holds sections 13–17 in abeyance for the interim period is a completely separate and independent section. In order to give efficacy to section 18 and Congress' intent to fill a void in court administration during the interim the result must be that cases started during the interim could be completed in the new District Court. Thus, while sections 13–17 provided specifically for the transfer, continuation, etc., of cases pending in the Territorial Court, section 18 in creating the interim court, *ipso facto*, provided for the transfer of cases started during the interim. No specific provision for the transfer of cases started in the interim court was required because jurisdiction over such cases would be vested in the newly created courts of Alaska by operation of law. At worst the scheme developed by Congress for the succession of courts and transfer of cases envisioned mere ministerial acts of transfer, etc., upon the formation of the new court system.[4]

3. No reason is readily apparent why appellant was not tried in the interim court. Over 15 months elapsed from the date of appellant's indictment (March 11, 1959) to the date of his trial in the new District Court for Alaska (June 15, 1960). My reading of the record discloses that the appellant did not object to the jurisdiction of the interim court nor of the new District Court until he filed a motion to arrest judgment (under Rule 34 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.) after the verdicts of guilty were returned. (The jurisdiction of the court can be raised at any time during the pendency of the proceeding. Rule 12 of the Federal Rules of Criminal Procedure.) Of course, these facts neither militate for nor against the position taken by the majority in their opinion or that taken by this opinion that the new District Court had the power to try the appellant upon the indictment from the interim court.

4. It is believed that the majority would not object to the proposition that the old Territorial Court was *not the interim court* and was something different therefrom. See Parker v. McCarrey, 268 F.2d 907 (9th Cir. 1960). Thus, the position that no specific section providing for the transfer of cases started in the interim was necessary is more persuasive in view of this difference. Sections 13–17 when read apart from section 18 relate only to the transfer of cases, etc., from the Territorial Court. If the interim court is

If section 18 is not read broadly to provide for the transfer of cases from the interim court the whole purpose of creating the interim court is undermined. It is well known that the completion of cases is a lengthy process often requiring several years. While this may not be as true with respect to criminal cases as with civil cases there is no sound reason to distinguish them for the purposes of the problem in this case. Since Congress had no way of knowing how long the interim period was to be (if less than three years) it certainly would not have created a court to act during this interim period if it thought that no case started therein could be completed by the new Alaska state or federal courts. It is patently unreasonable to assume otherwise. The only purpose of creating the interim court at all would be to fill an anticipated void in judicial administration thus promoting the orderly transformation of Alaska from a territory into a state.

The existence of section 18 along with the previous sections 13–17 creates a doubt as to just what Congress did provide for in the Statehood Act. When a court is faced with such a doubt it must endeavor to effectuate the purposes of the legislation and the intent of the legislators in passing it.[5] The intent to have a smooth changeover from the territorial court system to the state system is readily apparent when sections 13–18 are read as a whole. This intent is bolstered somewhat by the House of Representatives Report entitled "Alaska—Admission into Union", wherein the only reference to the sections here involved is made:

"Sections 13 through 17 provide for a continuation of suits, the succession of courts, the saving of rights of litigants in the courts. These five sections are recommended by the Judicial Conference Committee on Revision of the Judicial Code.

"Section 18 provides that the provisions of the preceding sections with respect to the termination of the jurisdiction of the District Court for the Territory of Alaska and related matters shall not be effective until 3 years after the effective date of this act unless the President should sooner proclaim that the United States District Court for Alaska is prepared to assume the functions imposed upon it. *During this interim the United States District Court for the Territory of Alaska shall perform the necessary functions.*" [Emphasis added.][6]

The last sentence of the above quotation indicates that Congress contemplated a smooth changeover of court business, and the quotation as a whole clearly indicates that sections 13–17 were considered to be separate and distinct from section 18. If section 18 is read separately and is given its due nothing but a smooth transfer of cases from the old system to the new can result. To get involved in the highly technical distinctions between the sections results in frustration of Congressional intent. The use of individual words should not defeat the meaning of a piece of legislation as a whole.[7]

something different from the Territorial Court (notwithstanding the phraseology used in section 18 in creating the interim court) sections 13–17 do not relate to any cases started therein; and the necessarily implied Congressional intent to have the interim court mean something supplies, by inference, the authority for the transfer of interim cases to the new Alaska federal or state courts as the case may be.

5. See, e. g., United States v. Union Pacific R. Co., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957); United States v. Brown, 333 U.S. 18, 26, 68 S.Ct. 376, 92 L.Ed. 442 (1948); People of Puerto Rico v. Shell Co., 302 U.S. 253, 258, 58 S.Ct. 167, 82 L.Ed. 235 (1937); United States v. Freeman, 3 How. 556, 565, 11 L.Ed. 724, 728 (1845).

6. H.R.Rep. No. 624, 85th Cong., 2d Sess., June 25, 1957, [To accompany H.R. 7999], 2 U.S.Code Congressional & Administrative News pp. 2933, 2955 (1958).

7. See United States v. Union Pacific R. Co., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed. 2d 693 (1957).

The appellant herein relies heavily on *Forsyth v. United States*, 9 How. 571, 50 U.S. 571, 13 L.Ed. 262 (1850) which involved a similar factual situation arising when Florida became a state. Notwithstanding their many similarities the Forsyth case and the instant case are distinguishable. In Forsyth Florida became a state on March 3, 1845, thus ending the existence of the Territory of Florida. On November 3, 1845, eight months later, an indictment was returned against Forsyth by a grand jury sworn before the Superior Court of the District of West Florida in the late Territory of Florida. On February 22, 1847, nearly two years after Florida was admitted to the Union, Congress passed "An Act to regulate the Exercise of appellate Jurisdiction of Supreme Court of the United States, in certain Cases, and for other Purposes." 9 Stat. 128 (29th Cong.Sess. II. Ch. 17, 1847). Among other things, the Act provided for the transfer of cases pending in the old territorial courts at the time of Florida's admission to the state courts of Florida or to the new United States District Court. In section 8 of this Act Congress recognized that some judicial business started in the Territorial Court would continue after Florida became a state and that perhaps new business would commence after such time also. It provided that such cases of a federal nature could be transferred to the new District Court and that such completed cases could be appealed to the United States Supreme Court. However, the Act added the provision:

> "That nothing in this act shall be construed as affirming or disaffirming the jurisdiction, power, or authority of the territorial judges to proceed in, or try, or determine such cases after the third of March, eighteen hundred and forty-five, but the same may be referred to said Supreme Court for its decision in all said cases on such writ of error or appeal."

8. 9 How. at 576, 50 U.S. at 576, 13 L.Ed. 262.

9. Ibid.

Relying on its earlier decision in Benner *v.* Potter, 9 How. 235, 50 U.S. 235, 13 L.Ed. 119 (1850), where the Court held that the jurisdiction of the territorial courts and their judges ceased upon Florida's admission as a state, the Court in Forsyth held that the proceedings wherein an indictment against Forsyth was returned in the old Territorial Court were "coram non judice, and void." [8] Thus, the new United States District Court for Florida couldn't proceed to try the defendant upon a void indictment. The Act was construed as providing for the transfer of all cases pending in the old territorial courts and also of cases completed or commenced after statehood, but in the latter situation the Court was quick to point out that the Act itself carefully guarded "against any construction that might be given to the act tending to affirm jurisdiction." [9]

The most notable distinction between the instant case and the Forsyth case is the presence of section 18 in this case and the absence of any comparable provision in Forsyth. In the Alaska situation Congress expressly provided for the existence of an interim court to transact judicial business during the interim between the end of the territorial courts and the beginning of the Alaska state and federal courts. In the Florida situation Congress did not utilize its power to create a special interim court. It merely assumed that the courts would continue to operate without giving them authority to do so, and, for some unexplained reason, Congress attempted to avoid jurisdictional problems by passing them on to the Supreme Court. Being more positive with respect to Alaska Congress included section 18 in the Statehood Act, and there would seem to be ample constitutional authority for that provision under Congress' power "to constitute Tribunals inferior to the Supreme Court." [10]

10. U.S.Const. art. I, § 8, cl. 9.

In Forsyth the Court expressly failed to reach the question whether Congress

The tenor of the acts relating to the transfer of cases, etc., as Florida and Alaska became states are vastly different. Other than the diverse wording of the statutes themselves, this difference in tenor is perhaps best illustrated by the fact that the Florida statute was not passed until nearly two years after Florida was admitted to statehood while the Alaska provisions were incorporated into the Statehood Act prior to its admission. The Florida situation is inconsistent with a design to fill a judicial void while the Alaska situation clearly illustrates an attempt to fill an obvious need to have some judicial administration during the foreseen interim period.

Forsyth does not prevent the result contended for herein that the new District Court had power to proceed with matters instituted in the interim court. Though factually analogous to this case in many respects, the law pertaining to the facts of Forsyth was different than that in this case, thus providing the grounds of distinction.

There is nothing in Parker v. McCarrey, 268 F.2d 907 (9th Cir. 1960) which necessarily conflicts with the view taken in this opinion. Parker v. McCarrey did not decide, as the majority say in their opinion, that "the last minute addition of Section 18 of the Enabling Act did not search far enough back through the act to correct inconsistencies." [11] Parker v. McCarrey merely decided that this court had no appellate jurisdiction over the interim court. The decision was predicated on the proposition that section 12 of the Act (unlike sections 13–17) was immediately effective upon Alaska's admission as a state, and that section 12 so amended the Judicial Code as to deprive this court of jurisdiction. Section 1291 of Title 28, United States Code, is the basic section providing for jurisdiction of the courts of appeals. Prior to Alaska's admission as a state it read:

"The courts of appeals shall have jurisdiction of appeals from all the final decisions of the district courts of the United States, *the District Court for the Territory of Alaska,* the United States District Court for the District of the Canal Zone, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court." [Emphasis added.]

Immediately upon Alaska's admission section 12(e) of the Alaska Statehood Act amended section 1291 by striking out the words "the District Court for the Territory of Alaska." [12] Since this court in Parker v. McCarrey decided that the interim court was neither the District Court for the Territory of Alaska nor the New District Court for the State of

had the power to provide for the trial of the defendant upon the so-called void indictment since the Act involved did not profess to confer such authority. Thus the statement of the Court—"We have no doubt they [Congress] possess no such power."—was clearly dictum. (9 How. at 576, 50 U.S. at 576.)

11. In Parker v. McCarrey the defendant, Parker, was indicted in the Territorial Court of Alaska before it became a state. He was threatened with trial in the interim court and having failed in his challenges to that court's jurisdiction he sought a writ of prohibition in this court to stop the proceedings in the interim court. We dismissed the petition for lack of jurisdiction.

In Deere v. United States, 268 F.2d 912 (9th Cir. 1959) and Selid Constr. Co. v. Guarantee Ins. Co., 268 F.2d 913 (9th Cir. 1959) judgments were entered by the interim court although parts of the proceedings took place in the old Territorial Court before Alaska became a state. The appeals were dismissed on the authority of Parker v. McCarrey. See also Kosters v. United States, 268 F.2d 913 (9th Cir. 1959); Emberg v. McCarrey, 268 F.2d 913 (9th Cir. 1959); Jackson v. United States, 270 F.2d 384 (9th Cir. 1959).

12. Section 12 of the Alaska Statehood Act, 72 Stat. 339 (1958) reads in pertinent part:

"Effective upon the admission of Alaska into the Union—

\* \* \* \* \*

"(e) The words 'the District Court for the Territory of Alaska,' are stricken out wherever they appear in sections 333, 460, 610, 753, 1252, 1291, 1292, and 1346 of title 28, United States Code."

Alaska there was no provision in the United States Code for jurisdiction over the interim court.[13] To reach the result reached in Parker, however unfortunate such a result may have been, it was not necessary at all to consider the effect of sections 13–18, because section 12 was completely separate and by its own terms immediately effective upon Alaska's admission on January 3, 1959. Thus, the court's language in Parker—"Further, we think that [restricted jurisdiction under the Statehood Act] is the net express effect of Sections 13, 14, 15, 16, 17 and 18, when read together."—[14] was clearly dictum. In no way was it decided that section 18 was not broad enough to provide for the continuation of suits started in the interim court.

Of its holding in this case the majority stated:

"[W]e appreciate that we must probably let a guilty man go; that we leave unresolved many questions and, perhaps, create new ones."

This is an understatement; for there is no question but that the problems created by the majority opinion are manifold.

The effect of the majority opinion in this case denying the power of the District Court to proceed with cases begun in the interim court is seemingly to question the very foundations of any case connected with the interim court. This effect is not minimized by setting forth a series of questions at the end of the opinion which are intended to describe those things which the majority opinion does not decide. A case such as this one is not decided in a vacuum. Its result es-

tablishes a shaky foundation for future cases in our circuit. The majority opinion undoubtedly will have far reaching effect on any litigation that transpired during the interim whether such litigation was (1) started in the old Territorial Court and completed in the interim court, (2) started and completed in the interim court, (3) started in the Territorial Court, partially completed in the interim court and completed in the new Alaska courts, or (4) started in the interim court and completed in the new courts.[15]

Under the scheme devised by Congress, at worst the transfer of cases from the interim court to the new District Court was a ministerial function of minor importance. At best such transfer was accomplished by operation of law as soon as the new courts were established and the interim court abolished. To fail to give proper efficacy to section 18 by strictly construing section 15 results in a chaotic condition totally abhorrent to the intended purpose of Congress to provide for a smooth transformation of Alaska from a Territory of the United States to a State of the United States.

A thorough review of the record in this case reveals that there is no merit to the appellant's contention that the evidence was insufficient to support his conviction.[16]

It is firmly believed that the more sound and reasonable approach to the problem in this case, and the one with which this court can better live, is incorporated in this dissenting opinion.

I would affirm.

13. See note 1 supra.

14. 268 F.2d at 909.

15. While reindictment of the appellant in the new District Court, as suggested by the majority, would have been a way to avoid the problem in this case the mere availability of that method of avoidance does not support the position of the majority. Reindictment was not required under my view.

16. On oral argument appellant's counsel waived any argument as to the sufficiency of the evidence establishing appellant's guilt.