**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2678
_____

UNITED STATES OF AMERICA

v.

VONTEZ SCALES, a/ka/ TEZ,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:18-cr-00576-005)
District Judge:  Hon. Mark A. Kearney
_____

Submitted Under Third Circuit LAR 34.1(a)
on June 25, 2021
_____

Before:  CHAGARES, PORTER, and ROTH, <u>Circuit Judges</u>

(Filed: August 30, 2021)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Vontez Scales was convicted of conspiring to distribute controlled substances,

including 500 or more grams of methamphetamine, and possessing heroin and fentanyl

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

with intent to distribute. At sentencing, he was designated a career offender and sentenced to 320 months in prison. On appeal, Scales challenges the sufficiency of the evidence supporting his convictions as well as the District Court's admission of certain opinion testimony by the case agent. He also argues that his sentence was tainted by the treatment of an inchoate offense as a controlled substance offense and career offender predicate, and that he should thus be resentenced in light of United States v. Nasir, 982 F.3d 144 (3d Cir. 2020) (en banc), abrogated in part on other grounds by Greer v. United States, 141 S. Ct. 2090, 2098 (2021). We will affirm Scales' convictions but vacate his sentence and remand for resentencing.

I.

Bucks County detectives arrested Scott Martin in March 2018 for methamphetamine distribution. Martin became a cooperator and told investigators that he regularly purchased large quantities of methamphetamine (at times referred to herein as "meth") from Damir Skipworth. The Bucks County Detectives Bureau and the Drug Enforcement Agency began investigating Skipworth and his drug trafficking organization. Law enforcement had Martin make controlled purchases of meth from Skipworth, and later tapped several of Skipworth and his associates' phone lines and set up a pole camera outside Skipworth's primary residence in Philadelphia. Investigators determined that one of Skipworth's associates was the defendant here, Vontez Scales. As discussed in more detail below, law enforcement agents reviewed calls and read messages between Scales and Skipworth, and observed them meeting at Skipworth's residence.

Scales, Skipworth, and six other co-defendants were indicted in March 2019 for conspiring to distribute narcotics. Following his indictment, law enforcement sought to arrest Scales at his apartment. Scales was not present when agents arrived, but came out of the elevator while agents were at his door. Agents arrested him and recovered $10,000+ in cash and the keys to an Acura SUV from his person. Agents located the Acura in the apartment building's parking lot; it had not been present when they arrived. The vehicle was impounded, and attempts were made to return it to its registered owner, a woman. Agents eventually searched the vehicle pursuant to a warrant. They recovered a plastic bag from the driver's door pocket that enclosed 295 smaller green wax bags containing a heroin/fentanyl mixture with a total weight of 9.28 grams, as well as clear plastic bags containing .92 grams of cocaine. Agents also found receipts and papers with Scales' name and phone number on them and a package addressed to him.

The Government filed a seven-count superseding indictment against Scales and four co-defendants in November 2019. All defendants pleaded guilty except Scales, who proceeded to trial on two counts: (1) conspiracy to distribute controlled substances, including 500 or more grams of methamphetamine, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute heroin, fentanyl, and cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

At trial, the Government introduced its wiretap and surveillance evidence primarily through the case agent, Bucks County Detective Jarrod Eisenhauer. This evidence centered on two drug transactions. The first occurred on September 14, 2018. Pole camera footage showed Scales leaving Skipworth's house on that date carrying a

3

bag. Shortly after Scales left, he texted[1] Skipworth, "Yo bro this sh[o]rt by 40" and "Cal[l] me." Supplemental Appendix ("Supp. App.") 5-6. Skipworth then received a text message from another phone number that contained a photograph of two bags containing a substance resembling meth[2] sitting on a digital scale reading 409.9 grams. Skipworth called Scales on the phone; Scales told him "That shit short" and "This one you gave me is short by 40 [grams]." Supp. App. 7.[3] Skipworth asked Scales if he was going to "bring it back around"; Scales replied that he was "bout to pull up." Supp. App. 7. A few minutes later, Scales called from the number that had sent the photo of the meth to tell Skipworth he was outside Skipworth's residence. The pole camera captured footage of a vehicle rented by Scales backing into Skipworth's driveway. Skipworth came outside and handed something into the vehicle.

---

[1] This text, like many of Scales' communications to Skipworth, came from a phone number subscribed to Scales' brother, Tavis. Scales provided this same number to a car rental agency in connection with two vehicles he rented in September and October; it was also listed on the package addressed to Scales found during the search of the Acura subsequent to his arrest.

[2] Scales objected to Eisenhauer's identification of the substance in the photograph as methamphetamine. The court initially sustained the objection, but allowed the Government to establish a foundation for Eisenhauer's testimony. Eisenhauer explained that he personally had purchased methamphetamine in the past while working undercover, that he had bought methamphetamine from Skipworth through Scott Martin, and that he was "very familiar" with the appearance of methamphetamine. App. 245. Scales again objected, this time asking if Eisenhauer was being qualified as an expert witness. The court ruled that it was not necessary to qualify Eisenhauer as an expert and allowed him to testify to his belief that the substance in the photograph was methamphetamine.

[3] A pound is equivalent to 453.592 grams. There was testimony that methamphetamine is commonly sold in pound quantities, rounded down to 450 grams.

4

Later that month, Scales and Skipworth discussed the status of their accounts. Scales asked Skipworth, "what I owe you anyway?" Skipworth replied, "I'm a give you the 40 I owe you just to make it even, just to make it right." Supp. App. 9. The two then argued over how much Scales still owed, as well as the price for a pound of methamphetamine. Scales asked if he had given Skipworth "two bucks." Id. Skipworth replied, "No bitch you gave me 2250." Scales responded, "It's only three bucks." Id. Skipworth replied that, no, "it's two, it's 3250 bro." Id. Scales then said "bro you been giving it to me for three bucks all this time." Id. Skipworth responded, "Yeah and you been buying it bro. You didn't even buy this shit bro. . . ." Id. The next day, the two had a short phone conversation and then met briefly in Skipworth's residence.

In the second drug transaction, which occurred on October 5, 2018, Skipworth served as a middleman for the sale of 50 grams of heroin/fentanyl from Scales to a trafficker from Allegheny County. In a call that day, Skipworth complained to Scales about the delay in getting the deal done and Scales vouched for the quality of the drugs. Pole camera footage showed Skipworth, the Allegheny trafficker, and another man meeting at Skipworth's residence. When Scales' vehicle arrived, Skipworth twice left his residence and went into the vehicle and then went back inside. The vehicle drove off after Skipworth got out the second time; the Allegheny trafficker and the other man left shortly thereafter to return to the Pittsburgh area. The next day, Skipworth and the trafficker had a ten-minute phone conversation in which they discussed the quality of the drugs the latter had purchased, his use of an adulterant in repackaging the drugs, his profit margin, and the effect of the drugs on his companion the previous day, who was so

5

affected after testing the drugs that the trafficker had to take over driving when they reached Harrisburg.

In addition to the transactions just discussed, Eisenhauer testified to other meetings and drug-related communications between Scales and Skipworth, and between Skipworth and another Philadelphia trafficker. This evidence suggested that the other trafficker supplied ten pounds of methamphetamine to Skipworth, who in turn supplied "half a pop," or half a pound, to Scales. Supp. App. 25. Detective Eisenhauer also testified to the events surrounding Scales' arrest.[4]

The jury acquitted Scales of the cocaine offense but convicted him of the others. Scales moved post-trial for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or alternatively for a new trial pursuant to Rule 33, arguing that the evidence was insufficient to support the jury's verdict. The District Court denied the motions in a thorough opinion and ultimately sentenced Scales to 320 months in prison. Scales timely appealed.

II.[5]

---

[4] The Government also put on a DEA agent who testified as an expert on narcotics and the terminology used by drug traffickers. He offered his interpretations of several of the intercepted phone calls and opined that the bags of heroin/fentanyl mixture found in the Acura were packaged for distribution.

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). When reviewing challenges to the sufficiency of the evidence, we "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (cleaned up). District court decisions regarding the admissibility of evidence are reviewed for abuse of discretion. United States v. Ayala, 917 F.3d 752, 760 (3d Cir. 2019).

Scales argues that there was insufficient evidence to support his conspiracy and possession convictions and that the District Court erred in admitting some of Detective Eisenhauer's opinion testimony without qualifying him as an expert.[6] We consider these arguments in turn.

A.

To obtain a conspiracy conviction under 21 U.S.C. § 846, the Government must prove "(1) a unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work toward the goal." United States v. Bansal, 663 F.3d 634, 665 (3d Cir. 2011). The existence of a criminal conspiracy can be proved by circumstantial evidence and "can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference that the activities of the participants could not have been carried on except as the result of a preconceived scheme or common understanding." United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999) (cleaned up).

Scales argues that there was "no evidence" of any of the elements of a § 846 conspiracy between Scales and Skipworth, or indeed that Scales "was involved with methamphetamine" at all. Scales Br. 18. He argues that, at most, the evidence "might

---

[6] Scales also argues that he must be resentenced in light of Nasir. The Government agrees. In Nasir, we held en banc that inchoate offenses such as conspiracy do not qualify as controlled substance offenses for purposes of the career offender sentencing enhancement. 982 F.3d at 160. The parties agree that, at the very least, the conspiracy conviction now on appeal thus no longer qualifies as a predicate for the career offender enhancement, and that Scales' Guidelines range should have been lower than the 360-months-to-life range used at sentencing. We will therefore vacate Scales' sentence and remand for resentencing. We leave other disputes regarding Scales' resentencing for the District Court to resolve in the first instance.

7

somehow be stretched to support the existence of a buyer-seller relationship," rather than a conspiracy, between Skipworth and Scales. Scales Br. 18-19.

Where a defendant's primary involvement in a conspiracy consists of buying or selling drugs, factors considered by this Court to differentiate between conspiratorial and non-conspiratorial buyer-seller relationships include: "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." Gibbs, 190 F.3d at 199.

Viewing the trial evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found Scales guilty beyond a reasonable doubt of conspiring to distribute controlled substances, and could have attributed 500 or more grams of methamphetamine to him. A rational jury could have concluded that there was a drug trafficking conspiracy with Skipworth at its center, that Scales was a member of this conspiracy, that the two shared a unity of purpose and intent to achieve the common goal of distributing controlled substances, and that they worked together toward that goal. Skipworth supplied Scales with methamphetamine and Scales supplied Skipworth with heroin/fentanyl. Their intercepted communications suggest the two men enjoyed a long affiliation marked by mutual trust, and that their methamphetamine transactions were standardized and sometimes occurred on credit. See United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008). And between the 409.9 grams of meth on the scale in the intercepted photograph, the 40 "short" grams that Scales later picked up from Skipworth, and the "half a pop" Scales obtained from the other Philadelphia trafficker by way of

8

Skipworth, a rational jury could have found that 500 or more grams was attributable to Scales. Supp. App. 25.[7]

B.

To prove a violation of 21 U.S.C. § 841, the Government must show that Scales "(1) knowingly possessed a controlled substance with (2) the intent to distribute it." Iglesias, 535 F.3d at 156. Scales argues that he cannot be held "responsible" for the heroin/fentanyl mixture found in the Acura following his arrest because the car was registered to someone else and it would be speculative to attribute the narcotics to him rather than that other person. Scales Br. 21-24.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt that Scales constructively possessed the heroin/fentanyl mixture in the Acura with the intent to distribute it. It is true that "simple ownership or control of a vehicle is not enough on its own to establish constructive possession of drugs found therein," but here there is "additional evidence [that] link[s] the defendant to the drugs." United States v. Brown, 3 F.3d 673, 683 (3d Cir. 1993). Scales was arrested with the keys to the Acura on his person, along with $10,000 in cash. Both Scales and the vehicle arrived at the scene after law enforcement, and the vehicle contained papers with Scales' name and phone number. A rational jury

---

[7] Scales argues alternatively that the evidence was insufficient to convict him "of the single conspiracy" charged in the operative indictment, as opposed to some other, separate conspiracy, because some participants in the charged conspiracy had no knowledge of or interaction with him. Scales Br. 19-20. This argument fails for the reasons already given and because no proof is required "that each defendant knew all of the conspiracy's details, goals, or other participants." United States v. Perez, 280 F.3d 318, 343 (3d Cir. 2002).

could have concluded that Scales constructively possessed the vehicle and its contents. And given the evidence that the heroin/fentanyl in the vehicle was packaged for distribution and of Scales' involvement in the Skipworth trafficking operation, a rational jury could have concluded that the drugs in the Acura belonged to Scales and that he intended to distribute them. See United States v. Martorano, 709 F.2d 863, 869 (3d Cir. 1983). That the vehicle was registered to someone else is irrelevant, as the dominion and control necessary for constructive possession "need not be exclusive." United States v. Introcaso, 506 F.3d 260, 271 (3d Cir. 2007).

## C.

Scales argues that the District Court erred in allowing Detective Eisenhauer to testify to his belief that the substance in the intercepted photograph was meth without qualifying him as an expert.[8] The Government argues that Eisenhauer's identification of the drug was permissible lay opinion testimony under Federal Rule of Evidence 701, which allows non-experts to offer opinions limited to matters "rationally based on the witness's perception" and that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a), (c). The Government also argues that any error here was harmless.

Rule 701 was amended in 2000 to prohibit lay witnesses from opining on subjects within the scope of Rule 702, the expert witness rule. See Fed. R. Evid. 701 advisory

---

[8] To the extent Scales suggests that other "speculative assertions" by Eisenhauer were improper expert testimony, Scales Br. 26, he has not preserved any such objection and has not clearly presented any such argument in his opening brief. Any further challenge is thus either forfeited or fails on plain error review.

committee's note to 2000 amendment. That amendment, however, was not intended to change existing law allowing "lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established." Id. The Advisory Committee's Note on the 2000 amendment explains that "[s]uch testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge." Id. Rule 701 generally allows a lay witness "to give her opinion or interpretation of an event when she has some personal knowledge of that incident." United States v. Fulton, 837 F.3d 281, 291 (3d Cir. 2016).

The District Court did not abuse its discretion by allowing Eisenhauer to testify to his belief that the substance in the intercepted photograph was methamphetamine. The Government laid a foundation for Eisenhauer's familiarity with methamphetamine, both generally through his experience purchasing meth undercover, and specifically in the context of this case through controlled buys from Skipworth. Eisenhauer also testified that the substance in the photograph was packaged identically to meth seized from Skipworth and acquired in the controlled buys. It was within the court's discretion to allow Eisenhauer to offer his lay opinion, subject to cross-examination, that the substance in the photo was meth.

Even if there was error here, it was harmless. There was ample evidence from which the jury could find Scales guilty of conspiracy to distribute controlled substances, and sufficient other evidence concerning the September 14 transaction for the jury to conclude that the substance depicted in the photograph was methamphetamine. And given Eisenhauer's background and experience, he could have been qualified as an

11

expert, and "the same testimony could have been offered under Rule 702 in the first instance." United States v. Smith, 962 F.3d 755, 768 (4th Cir. 2020).

## III.

For the foregoing reasons, we will affirm Scales' convictions and vacate his sentence and remand for resentencing.